IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| XLEAR, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>STS HEALTH, LLC, a Virginia Limited Liability Company,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER REGARDING CLAIM CONSTRUCTION**<br><br>Case No. 2:14-cv-00806-DN<br><br>District Judge David Nuffer |

Both parties filed claim construction briefs on February 28, 2017.[1] The parties followed up with responses to each other's claim construction brief on April 4, 2017.[2] On April 12, 2017 the parties filed a joint claim construction chart and status report.[3] In the Joint Status Report, the parties list two terms for claim construction, but agree on the construction of one of them. Therefore, the only term that remains to be construed is *an effective amount*. Both parties agree that a claim construction hearing is not necessary and that the claims can be construed based on the available briefing.[4] For the reasons below, Plaintiff's construction of the term "an effective amount" will be adopted .

---

[1] Defendant STS Health, LLC's Claim Construction Brief, docket no. 65, filed Feb. 28, 2017; Plaintiff's Motion for Claim Construction, docket no. 67. filed Feb. 28, 2017.

[2] Defendant STS Health, LLC's Response to Plaintiff Xlear, Inc.'s Claim Construction Brief, docket no. 74, filed Apr. 4, 2017; Plaintiff's Xlear, Inc.'s Response to Defendant's Claim Construction Brief, docket no. 75, filed Apr. 4, 2017.

[3] Joint Claim Construction Chart and Status Report ("Joint Status Report"), docket no. 77, filed Apr. 12, 2017.

[4] Joint Status Report at 2 and 5.

## BACKGROUND

On November 5, 2014, Plaintiff XLEAR, Inc ("XLEAR") filed suit against STS Health, LLC ("STS") for infringement of United States Patent No. 6,054,143 ("the '143 patent"). The '143 patent is titled "Xylitol Delivery" and was issued on April 25, 2000.[5] It relates generally to a method for nasal administration of xylitol. Claim 1, the only independent claim of the '143 patent, states:

> 1. A method of cleaning the nasopharynx in a human in need of said method which comprises nasally administering an effective amount of xylitol/xylose in solution.[6]

In the parties' claim construction chart, they list "xylitol/xylose" and "an effective amount" as the only terms that need construction.[7] The parties have agreed on a construction for "xylitol/xylose".[8] Therefore, only the term "an effective amount" needs construction.

XLEAR argues for the plain and ordinary meaning of "an effective amount", in light of the preamble to claim 1.[9] In other words, "an effective amount" is an amount effective to clean the nasopharynx in a human. STS argues "an effective amount" is between 1% and 64% xylitol/xylose in solution, based on language from the body of the specification.[10]

## LEGAL STANDARD

The claims of a patent "define the invention to which the patentee is entitled the right to exclude."[11] Claim terms "are generally given their ordinary and customary meaning,"[12] and a

---

[5] U.S. Patent No. 6,054,143, at [54] (filed Dec. 23, 1998).

[6] '143 Patent at col.4 ll.55-57 (Claim 1).

[7] Joint Status Report at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)(citation and quotation omitted).

[12] *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

court is to determine "the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention . . . ."[13] "Common words, unless the context suggests otherwise, should be interpreted according to their ordinary meaning."[14]

Claim construction is an issue of law for the court to decide.[15] The starting point for construing claim terms is the intrinsic evidence (the claims, the patent specification, and the prosecution history).[16] "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term."[17]

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."[18] Although claims must be read in light of the specification, limitations from the specification may not be read into the claims.[19] It is well settled that the invention should not be limited to the specific examples or preferred embodiment found in the specification.[20]

## DISCUSSION

Typically, the first place to look for help in construing a term is the claims in which the terms appear. "Other claims of the patent in question … can also be valuable sources of enlightenment as to the meaning of a claim term."[21] Claim 7 of the '143 patent states:

---

[13] *Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1177 (Fed. Cir. 2009).

[14] *Desper Prods., Inc. v. QSound Labs., Inc.*, 157 F.3d 1325, 1336 (Fed. Cir.1998).

[15] *Markman*, 517 U.S. at 384.

[16] *Phillips,* 415 F.3d at 1313.

[17] *Vitronics*, 90 F.3d at 1583.

[18] *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998).

[19] *See Phillips*, 415 F.3d at 1323; *Comark Commc'ns. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir.1998).

[20] *See Phillips*, 415 F.3d at 1323.

[21] *Id.* at 1314.

> 7. The method as defined in claim 1 wherein said xylitol/xylose in aqueous solution comprises from one gram to 64 grams of xylitol/xylose in 100 cc or solution.[22]

This is a dependent claim for xylitol/xylose in 1% to 64% solution. When a dependent claim includes a particular limitation there is "a presumption that the limitation in question is not present in the independent claim."[23] This presumption arises from the desire to avoid construing some claims redundant. Therefore, there is a presumption that STS's construction of the term *an effective amount* is incorrect. If that construction were to be adopted, claim 7 would be redundant and unnecessary.

Another factor to consider in the construction of a claim term is the claim's preamble. Typically, the preamble of a claim is not a limitation on that claim. However, courts can determine that a preamble is a limitation on the claim after a review of the entire patent, "to gain an understanding of what the inventors actually invented and intended to encompass by the claim."[24] One way a preamble can limit an invention is if "it is necessary to give life, meaning, and vitality to the claim."[25] However, if the "patentee defines a structurally complete invention in the claim body", then the preamble is typically not limiting.

In claim 1 of the '143 patent, the patentee did not lay out a structurally complete invention in the claim body. To understand what "an effective amount" is, we need to understand what *effect* is the target of the *effective amount*. The language in the claim body states, "…nasally administering an effective amount of xylitol/xylose in solution".[26] There is no

---

[22] '143 Patent at col.5 ll.3-5 (Claim 7).

[23] *Philips*, 415 F.3d at 1314.

[24] *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

[25] *Id.* (internal quotations omitted).

[26] '143 Patent at col.4 ll.55-57 (Claim 1).

indication in the claim body as to what *effect* the patentee desired. Therefore, it is not clear how much *an effective amount* would be. The preamble of that claim states that it is a "method for *cleaning the nasopharynx* in a human in need of said method…."[27] The desired *effect* is cleaning the nasopharynx. Understanding this effect gives meaning to the claim. Without it, *an effective amount* would be ambiguous.

The body of the specification can also be useful in determining the meaning of a term. Typically, claim terms are "given their ordinary and customary meaning."[28] However, the "specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess."[29] If that is the case, "the inventor's lexicography governs." STS argues that the patentee defined "an effective amount" in the body of the specification.[30] STS points to the following language: "As little as 1% xylitol/xylose in solution appears to be the effective minimum strength…."[31] This argument is not persuasive.

It is a well established that a patentee can act as its own lexicographer when defining terms in its claims. However, the specification must "clearly redefine a claim term so as to put one reasonably skilled in the art on notice that the patentee intended to so redefine the claim."[32] In this instance, there is no clear intent to redefine. The patentee uses the language *appears*, an imprecise term. An imprecise term, by definition, is not clear. Also, there is relevant language at the end of that same section in the patent that implies lack of intent to redefine. It states:

> The restrictive description of the specific examples above do not point out what an infringement of this patent would be, but are to point out advantages and the

---

[27] *Id.* (emphasis added).

[28] *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

[29] *Id.* at 1316.

[30] Joint Status Report at 5-6.

[31] *Id* at 5 (quoting the '143 patent specification at column 3, lines 5-14).

[32] *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

5

progressive contribution to the healing arts and to enable one skilled in the art to make and use the invention. The *limits of the invention* and the bounds of the patent protection are measured by and defined in the following claims.[33]

The imprecise nature of the word *appears* and the language from the specification cited above together raise doubt that the patentee intended to use a meaning other than the ordinary meaning of the term *an effective amount*. "Absent an express intent to impart a novel meaning, claim terms take on their ordinary meaning."[34]

Further, an invention should not be limited to the specific examples or preferred embodiment found in the specification.[35] One of the main purposes of the specification is to "teach and enable those of skill in the art to make and use the invention."[36] An effective way to do this is to "provide an example of how to practice the invention in a particular case."[37] The language that STS cites is in a section titled "Description of the Preferred Embodiments."[38] This title implies that the section does not lay out the limitations of the invention, but only describes some embodiments of the invention. To avoid "importing limitations into the claims" from the specification,[39] the language that STS cites from the body of the specification cannot be used to change the clear and ordinary definition of *an effective amount*.

---

[33] '143 Patent at col.4 ll.4-9 (emphasis added).

[34] *Elekta*, 214 F.3d at 1307.

[35] *See Phillips*, 415 F.3d at 1323.

[36] *Id.*

[37] *Id.*

[38] '143 Patent at col.3 ll.5-6.

[39] *Phillips*, 415 F.3d at 1323.

## ORDER

IT IS HEREBY ORDERED that the claims term *an effective amount* be construed as follows:

An Effective Amount: An amount effective to clean the nasopharynx in a human.

Signed April 4, 2019.

        BY THE COURT

        _____
        David Nuffer
        United States District Judge